**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CASE NO. 1:16-cv-20652**

TRACFONE WIRELESS, INC.,

*Plaintiff*,

vs.

VMBC f/k/a VOICE & MOBILE
BROADCAST CORP. d/b/a VMBC,

*Defendant.*

_______________________________________/

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff TracFone Wireless, Inc. ("TracFone") sues Defendant VMBC f/k/a Voice & Mobile Broadcast Corp. d/b/a VMBC ("VMBC"), and alleges:

1. This is an action for monetary damages in excess of $75,000.00 and injunctive relief arising from VMBC's defective provision of goods and services to TracFone and VMBC's misappropriation of TracFone's confidential trade secrets.

**THE PARTIES**

2. TracFone is a Delaware corporation with its principal place of business in Miami, Florida. TracFone is thus a citizen of Delaware and Florida.

3. VMBC is a California corporation with its principal place of business in Aliso Viejo, California. VMBC is thus a citizen of California.

4. TracFone markets and sells prepaid mobile phone service in the United States through several different brands. One of these brands is SafeLink Wireless® ("SafeLink"), a brand that TracFone markets and sells prepaid mobile phone service through in connection with the federal Lifeline program.

5. Lifeline is a federal program funded by the federal Universal Service Fund which is administered by the Federal Communications Commission ("FCC"). Lifeline is subject to FCC regulations as well as regulations of various state regulatory commissions, including, but not limited to, the Florida Public Service Commission.

6. The relationship between TracFone and VMBC arises from a Vendor Services Agreement entered into between TracFone and VMBC on September 12, 2007 (the "Agreement"). A copy of the Agreement is attached as **Exhibit A**.

7. TracFone and VMBC entered into an Exhibit to the Agreement dated May 21, 2008 (the "Exhibit"), which has been amended on multiple occasions, pursuant to which VMBC agreed to provide certain Lifeline Enrollment and Record Management Services more specifically described therein, but which included the design, development, deployment and ongoing refinement of a verification software ("Verification Application"). A copy of the Exhibit, the Proposal, and the various amendments are attached as **Composite Exhibit B**.

8. TracFone engaged VMBC to design, develop, deploy and maintain a secure, redundant, and hosted software program referred to by the parties as a "Lifeline Services Enrollment and Record Management System" ("LSERMS").

9. The VMBC designed Verification Application would be used by both TracFone's third party marketing agents when verifying the eligibility of applicants and directly by applicants when the applicant submitted the application on their own through the internet.

10. VMBC modified and updated the Verification Application in 2012. However, unbeknownst to TracFone until July 2015, these modifications were defective and created a material defect in the verification system that, in certain circumstances, caused the federal and state

qualification and verification requirements to be bypassed and enroll (and receive compensation for) tens of thousands of ineligible applicants into this federal program.

11. While developing the software program and working with TracFone under strict contractual protections, VMBC acquired knowledge of how TracFone operates and TracFone's confidential business processes and procedures, including but not limited to TracFone's proprietary business strategies and processes used for identifying, training, and managing agents.

12. TracFone further discovered that VMBC has taken the confidentially-provided knowledge of TracFone's business processes, and used that confidential information to create and market a derivative product across various platforms, including to TracFone's directing competitors in the Lifeline program.

13. As a result of VMBC's defective modifications and updates to the Verification Application, which failed to comply with applicable state and federal regulations, and VMBC's misappropriation and misuse of TracFone's confidential information, TracFone has suffered monetary damages in excess of $75,000.00.

## JURISDICTION AND VENUE

14. Jurisdiction in this Court is proper pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000.00 and there is complete diversity of citizenship between the parties.

15. Venue is proper in this District because Agreement has a submission to venue provision in paragraph 20.5 that provides that the "parties hereby submit to the jurisdiction of the federal and state courts located in Miami-Dade County, Florida for all purposes relating to the enforcement of this Agreement."

16. Independent of the Agreement, venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(a) and (b) because a substantial part of the events or omissions giving rise to the claim occurred in this District and the impact of VMBC's misconduct was felt in this District.

## GENERAL ALLEGATIONS

17. The FCC's Lifeline program is supported by the federal Universal Service Fund ("USF") established by the FCC, and is available to low-income consumers throughout the United States. The program is administered by the Universal Service Administrative Company ("USAC"), an entity created by the FCC to administer USF programs, including Lifeline. USAC is responsible for data collection and maintenance, support calculation, and disbursements for the program.

18. In order to participate in the Lifeline program, consumers must either have an income that is at or below 135% of the federal poverty guidelines (or another level specified by the state) or participate in one of several specified government assistance programs.

19. Strict requirements established by the FCC and state commissions such as the Florida Public Service Commission are applicable to low-income consumers seeking benefits under the Lifeline program. For example, a consumer (i) must provide documentation enrollment in a Lifeline-qualifying program; (ii) is prohibited from receiving more than one Lifeline-supported service per household; (iii) may receive a discount on either a landline or a wireless phone, but not both; and (iv) must select a single Lifeline provider and contact the other provider to de-enroll from that other program in situations where that consumer's household is receiving more than one Lifeline service. Failure to comply with these strict requirements could subject a consumer to de-enrollment from the Lifeline program and civil and/or criminal penalties.

20. Consumers must re-certify annually that they remain Lifeline eligible for participation in the Lifeline program. If a consumer fails to re-certify, that consumer must be de-enrolled from the program.

21. Beginning in 2008, and continuing through the present, TracFone has offered its SafeLink service for consumers who qualify to participate in the federal Lifeline program in states where TracFone has been designated as an ETC either by a state commission or by the FCC as required by Section 214(e) of the Communications Act of 1934, as amended (47 U.S.C. § 214).

22. In order to participate in the SafeLink program, a consumer must meet certain eligibility requirements set by the FCC and/or the state where the service is to be provided at the time the consumer applies for the program.

23. Through the SafeLink program, TracFone offers free wireless phone service and free phones for qualifying low-income consumers. For providing this service to qualifying applicants, TracFone receives a payment from the USAC on a monthly basis in the amount of $9.25 per qualified user upon activation of their cell phone (which takes place upon sending or receiving the first call). The $9.25 monthly reimbursement from USAC subsidizes TracFone for the monthly service provided to the enrolled customer. However, the cell phones which are provided to Lifeline customers at no charge are paid for entirely by TracFone, and are not subsidized by the Universal Service Fund.

24. TracFone markets its SafeLink program through many different channels, including on television and radio, over the internet, by direct mail and by telephone. In addition to advertising directly to end users through those avenues, TracFone contracts with third party marketing agencies to conduct grassroots marketing campaigns in specific locations designed to target potential qualifying consumers (*e.g.*, churches, community centers, government offices, low-income housing,

senior centers and youth centers). The individuals performing these grassroots marketing campaigns are sometimes referred to as "Street Teams."

25. Until 2012, the FCC required that applicants for the Lifeline program certify their eligibility through a series of questions and answers that would allow them to "self-certify." In 2009, the State of Florida created the first "eligibility database" that permitted ETCs, including TracFone, to access the Florida database maintained by the Florida Department of Children and Families ("Florida DCF") to determine whether an applicant was eligible when matched against state eligibility records. At that time, the FCC allowed customers to be deemed Lifeline-eligible either by "self-certifying" or by being matched through one of these state eligibility databases.

26. In 2012, the FCC promulgated a series of rules to reform the Lifeline program which changed the way ETCs are required to determine Lifeline applicants' eligibility and began to require that ETCs either obtain written documentation from the applicant that the applicant is enrolled in a Lifeline-qualifying program to be reviewed by the ETCs before consumers could be enrolled in the Lifeline program or match the consumer through the applicable state eligibility databases.

27. State eligibility databases do not exist for every Lifeline-qualifying program. In Florida, the Florida DCF database contains enrollment data for three Lifeline-qualifying programs: Medicaid, the Supplemental Nutrition Assistance Program ("SNAP" – formerly known as the Food Stamp program) and TANF (collectively, the "Florida Database Programs"). The Florida DCF database does not contain enrollment data for the other Lifeline-qualifying programs: SSI, LIHEAP, Section 8 Housing, and the National School Free Lunch Program (collectively, the "Florida Non-Database Programs").

28. VMBC knew that Lifeline was a Federal program and that there were strict guidelines relating to the program.

29. To satisfy the change in the FCC's verification requirements that became effective in 2012, and in an effort to comply with its contractual obligation to continuously monitor system performance and make improvements, VMBC modified and updated the Verification Application software in 2012 to require an applicant either to submit written proof of eligibility (full certification) or to match eligibility against applicable state databases.

30. For the State of Florida, the VMBC Verification Application was revised to permit an applicant to check for a match through an eligibility database established by Florida DCF (which had information on individuals eligible under the Florida Database Programs but not the Florida Non-Database Programs) or to submit written proof if the applicant could not confirm eligibility through the Florida DCF database or otherwise chose to provide such other written proof.

31. TracFone learned in July 2015 that the modifications that VMBC made to this software in 2012 were materially defective.

32. The updated—but materially defective—VMBC Verification Application software was (a) loaded onto tablet devices (*e.g.*, iPads) which were provided to "Street Team" agents for use in the field during their grassroots marketing campaigns; and (b) placed onto the internet for consumers to use directly.

33. In addition to entering full legal name and address, among other information, the applicant had to select on the VMBC Verification Application the Lifeline-qualifying government assistance program(s) in which the consumer participates. The applicant had the option of selecting (a) Medicaid; (b) SNAP; (c) Supplemental Security Income (SSI); (d) Federal Public Housing Assistance (Section 8); (e) Low-Income Home Energy Assistance Program (LIHEAP); (f) National School Lunch Program's (Free Lunch Program); and/or (f) Temporary Assistance for Needy Families (TANF).

34. In the event a Florida applicant selected one or more of the Florida Database Programs (*i.e.*, Medicaid, SNAP and TANF), the Verification Application was supposed to automatically match eligibility for those programs through the Florida DCF database. In the event a Florida applicant selected one or more of the Florida Non-Database Programs (*i.e.*, SSI, LIHEAP, Section 8 Housing, and the National School Free Lunch program), the applicant was supposed to submit written proof of participation in those programs.

35. The material defect in the VMBC Verification Application caused the system to bypass the required DCF database match for eligibility under the Florida Database Programs if the person completing the application checked off that the applicant was a participant in both a Florida Database Program <u>and</u> a Florida Non-Database Program, regardless of whether that was correct.

36. This material defect would apparently cause the VMBC Verification Application to automatically qualify the applicant without checking the DCF database for eligibility under a Florida Database Program and without requiring the applicant to submit written proof of participation in a Florida Non-Database Program.

37. This material defect was the result of a defect in the software code that was revised and updated by VMBC in 2012.

38. Had VMBC designed and developed the updates and modifications to the software code for the Verification Application correctly and in compliance with FCC regulations in 2012, the VMBC Verification Application would not have permitted unqualified applicants to be enrolled in the SafeLink program; rather, it would have rejected any unqualified applicants.

39. It appears that more than 350,000 individuals were enrolled into the program through VMBC's material defect.

40. TracFone first became aware of a potential issue on July 7, 2015.

41. VMBC's actions have forced TracFone to incur direct costs including payment of fraudulent commissions, return of funds, loss of phones and airtime and other costs.

42. TracFone also discovered in or around December of 2015 that, in violation of the Agreement, VMBC has improperly exploited the knowledge of TracFone's confidential and proprietary business processes that it obtained subject to the protections of the Agreement and is now using that confidential information for its own pecuniary gain.

43. Because TracFone carefully guards its confidential business processes, TracFone negotiated to include language in the Agreement expansively defining and protecting TracFone's confidential information. VMBC knew of and agreed to the following definitions and protections provided by the Agreement.

44. Pursuant to Section 12.2 of the Agreement, TracFone's "Confidential Information" includes "any proprietary information, customer information, technical data, trade secrets or know-how, research, experiments, inventions, processes, formulas, designs, drawing, products, services, plans, markets, finances, equipment, software, source code, hardware configuration, or other information disclosed or made available by TracFone…" Section 12.2 also designates as TracFone's confidential information, among other things, TracFone's methods for obtaining new accounts, human resources information, marketing information, and strategic plans.

45. VMBC agreed in Section 12.7 of the Agreement "not to use TracFone's Confidential Information for its own or for any other purpose except to engage in the said business opportunity." VMBC also agreed "<u>not to disclose or transfer</u> any of the Confidential Information to any other persons or entity." *Id.* (emphasis in original). Furthermore, under Section 12.8, VMBC agreed "that any inventions, ideas or original work of authorship, in whole or in part, conceived or

made by them during or after their term of employment or relationship with TracFone, shall belong exclusively to TracFone…" (emphasis in original).

46. Both parties agreed "to promptly advise the other in writing of any misappropriation or misuse by any person of such Confidential Information, which may come to [their] attention." Section 12.14. VMBC also agreed that if it failed to comply with any of its obligations, TracFone would be entitled to injunctive relief. Section 12.16.

47. TracFone recently learned that VMBC, acting on its own behalf and also through its corporate affiliate Emerios and under the umbrella of their parent company Beyond Blue Holdings, Inc. ("Beyond Blue") is violating these provisions by using TracFone's confidential business processes, including but not limited to TracFone's proprietary business strategies and procedures, know how, and other information relating to TracFone's identification, recruiting, training, managing, and retaining agents ("TracFone's Confidential Business Processes") and utilizing that information for VMBC's own improper purpose.

48. As an example, TracFone discovered that Emerios, a corporate affiliate of VMBC holding itself out as an "Agent Management Company," is marketing an application called Quest. According to Emerios, the Quest application functionality includes "high quality agent recruitment, screening, onboarding, training, and enrollment management." Emerios further describes Quest as having been "built for Eligible Telecommunications Carriers (ETCs) who are either currently, or planning to participate, in the Lifeline program," and as providing "State approved and pre-qualified lifeline applications for ETC review and USAC submission." This information is taken directly from Emerios' own website: www.emerios.com, as accessed on December 17, 2015. A copy of the website as it existed on December 17, 2015 is attached as **Exhibit C**.

49. The Quest application, with functionality designed and derived based on TracFone's Confidential Business Processes, is one example of how VMBC, Emerios and Beyond Blue are exploiting TracFone's Confidential Business Processes and using them to develop and market products for their own pecuniary gain.

50. As a result of VMBC's misappropriation and misuse of TracFone's Confidential Business Processes, TracFone has suffered and continues to suffer damages.

51. TracFone's agreements with VMBC included a redeployment option, exercisable by TracFone, under which TracFone may elect to host, manage and support the Lifeline program with the assistance and facilitation of VMBC (the "Redeployment Option"). *See* Composite Exhibit B at 12 ("Optional – Redeployment to TracFone Network and Management").

52. On January 20, 2016, TracFone sent VMBC a letter (1) advising of TracFone's election to exercise the Redeployment Option; and (2) requesting a statement of work from VMBC for the redeployment by no later than February 1, 2016 (the "Redeployment Letter"). A copy of the Redeployment Letter is attached as **Exhibit D.**

53. VMBC has not responded to the Redeployment Letter and has not provided the requested statement of work.

54. All conditions precedent to the filing of this action have been met, satisfied or otherwise been waived.

55. TracFone has agreed to pay the undersigned law firm a reasonable fee for its services in both investigating the problems and bringing this action. TracFone is entitled to recover all attorneys' fees and costs incurred as of result of VMBC's conduct under the Agreement at issue.

## CAUSES OF ACTION

### COUNT I

### BREACH OF CONTRACT – DELIVERY OF DEFECTIVE PRODUCT

56. TracFone repeats, re-alleges and incorporates by reference as if fully set forth herein the allegations contained in paragraphs 1 through 55 of this Complaint.

57. This is an action against VMBC for breach of the Agreement, as amended by the Exhibit and all of the Exhibit's amendments (collectively, the "SafeLink Contract").

58. TracFone performed its duties and obligations under the SafeLink Contract.

59. VMBC breached the contract by, among other things: (i) developing and deploying a defective modification and update to the Verification Application software in 2012 that failed to comply with FCC regulatory requirements for the Lifeline program; (ii) failing to comply with all applicable laws and regulations associated with the FCC's Lifeline and TracFone's SafeLink program; (iii) failing to fully indemnify and hold TracFone harmless from all claims, losses, liabilities, damages, suits, actions, government procedures, taxes, penalties or interest, associated auditing and legal expenses and other costs incurred by TracFone as a result of VMBC's breaches of its obligations and warranties under the SafeLink Contract; (iv) failing to comply with all applicable federal, state, county and local laws, ordinances, regulations and codes in the performance of VMBC's obligations under the SafeLink Contract; and (v) failing to reimburse TracFone $66.75 per individual enrolled in the program through VMBC's material defect.

60. TracFone has been damaged by VMBC's breaches of the SafeLink Contract.

Wherefore, TracFone demands judgment for damages against VMBC, together with pre-judgment and post-judgment interest, prevailing party attorneys' fees under the SafeLink Contract, and costs.

## COUNT II

### BREACH OF EXPRESS WARRANTY PURSUANT TO FLA. STAT. § 672.313: SECTION 11.1 OF THE AGREEMENT

61. TracFone repeats, re-alleges and incorporates by reference as if fully set forth herein the allegations contained in paragraphs 1 through 55 of this Complaint.

62. This is an action for breach of express warranty, pursuant to Fla. Stat. § 672.313, against VMBC.

63. VMBC and TracFone contracted for services under the SafeLink Contract.

64. VMBC expressly warranted to TracFone under the SafeLink Contract that: "the Services to be delivered or rendered hereunder, will be the kind and quality designated, and free of defects for a period of ninety days (90) days after being accepted by TracFone." Agreement, § 11.1.

65. VMBC breached this express warranty because the software update delivered to TracFone by VMBC in 2012 was defective at the time of delivery.

66. VMBC agreed to "indemnify and hold TracFone harmless from and against any cost, loss, damage or expense (including reasonable attorney's fees) incurred by TracFone as a result of a breach of the foregoing warranty." Agreement, § 11.4.

67. TracFone has provided VMBC with notice of its breach of the express warranty provided for in Section 11.1 of the Agreement.

68. TracFone has sustained injuries as a result of VMBC's breach of warranty.

Wherefore, TracFone demands judgment for damages against VMBC, together with pre-judgment and post-judgment interest, attorneys' fees under the SafeLink Contract, and costs.

## COUNT III

### BREACH OF EXPRESS WARRANTY PURSUANT TO FLA. STAT. § 672.313: SECTION 11.1 OF THE AGREEMENT

69. TracFone repeats, re-alleges and incorporates by reference as if fully set forth herein the allegations contained in paragraphs 1 through 55 of this Complaint.

70. This is an action for breach of express warranty, pursuant to Fla. Stat. § 672.313, against VMBC.

71. VMBC and TracFone contracted for services under the SafeLink Contract.

72. VMBC expressly warranted to TracFone under the SafeLink Contract that: "any software (and all subsequent versions, releases, updates, revisions of any kind developed or created pursuant to this Agreement), at the time of delivery to TracFone, is and shall be capable of performing all functions specified in this Section (and in the applicable related Specifications, user requirements and/or documentation), both prior to and following January 1, 2000."

73. VMBC breached this express warranty because the software update delivered to TracFone by VMBC in 2012 was defective at the time of delivery.

74. VMBC agreed to "indemnify and hold TracFone harmless from and against any cost, loss, damage or expense (including reasonable attorney's fees) incurred by TracFone as a result of a breach of the foregoing warranty." Agreement, § 11.4.

75. TracFone has provided VMBC with notice of its breach of the express warranty provided for in Section 11.2 of the Agreement.

76. TracFone has sustained injuries as a result of VMBC's breach of warranty.

Wherefore, TracFone demands judgment for damages against VMBC, together with pre-judgment and post-judgment interest, attorneys' fees under the SafeLink Contract, and costs.

## COUNT IV

### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY PURSUANT TO FLA. STAT. § 672.314

77. TracFone repeats, re-alleges and incorporates by reference as if fully set forth herein the allegations contained in paragraphs 1 through 55 of this Complaint.

78. This is an action for breach of implied warranty of merchantability pursuant to Fla. Stat. § 672.314 against VMBC.

79. VMBC designed, developed and deployed a software program, called the "Street Team App," for a web-based enrollment application that was supposed to, among other things, properly verify applicants for participation in the SafeLink program under the applicable FCC rules. TracFone purchased this software product from VMBC.

80. VMBC delivered an update to the software product in 2012 that was defective.

81. TracFone was a foreseeable user of the software product.

82. TracFone has provided VMBC with notice of its breach of warranty.

83. TracFone has sustained injuries as a result of VMBC's breach of warranty.

Wherefore, TracFone demands judgment for damages against VMBC, together with pre-judgment and post-judgment interest, attorneys' fees under the SafeLink Contract, and costs.

## COUNT V

### BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE PURSUANT TO FLA. STAT. § 672.315

84. TracFone repeats, re-alleges and incorporates by reference as if fully set forth herein the allegations contained in paragraphs 1 through 55 of this Complaint.

85. This is an action for breach of implied warranty of fitness for a particular purpose pursuant to Fla. Stat. § 672.315 against VMBC.

86. VMBC designed, developed and deployed a software program, called the "Street Team App," for a web-based enrollment application that was supposed to, among other things, properly verify applicants for participation in the SafeLink program under the applicable FCC rules. TracFone purchased this software product from VMBC.

87. VMBC understood that the purpose of the software product was to verify eligibility of applicants for participation in the SafeLink program under the applicable FCC rules.

88. TracFone relied on VMBC's judgment and expertise in making sure that the product provided would be suitable for the intended purpose.

89. VMBC delivered an update to the software product in 2012 that was defective.

90. TracFone has provided VMBC with notice of its breach of warranty.

91. TracFone has sustained injuries as a result of VMBC's breach of warranty.

Wherefore, TracFone demands judgment for damages against VMBC, together with pre-judgment and post-judgment interest, attorneys' fees under the SafeLink Contract, and costs.

## COUNT VI

### CONTRACTUAL INDEMNIFICATION

92. TracFone repeats, re-alleges and incorporates by reference as if fully set forth herein the allegations contained in paragraphs 1 through 55 of this Complaint.

93. This is an action against VMBC for contractual indemnification.

94. Pursuant to Section 7.1 of the Agreement, VMBC agreed to:

> …indemnify and hold harmless TracFone and its subsidiaries, affiliates and parent and their respective directors, officers, employees, agents, attorneys, affiliates, successors, and assigns ("Indemnified Parties") from all claims, losses, liabilities, damages, suits, actions, government procedures, taxes, penalties or interest, associated auditing and legal expenses and other costs incurred by Indemnified Parties ("Claims"), arising from (a) [VMBC's] breach of any obligation or warranty

> or misrepresentation under this Agreement; … [and] (d) [VMBC's] … failure to comply with applicable laws or regulations….

95. VMBC also agreed, under Section 11.4 of the Agreement, to "indemnify and hold TracFone harmless from and against any cost, loss, damage or expense (including reasonable attorney's fees) incurred by TracFone as a result of a breach of the foregoing warranty" set forth in Section 11.

96. VMBC further agreed, in accordance with Section 18.3 of the Agreement, to hold harmless and indemnify TracFone "against any loss or damage (including reasonable attorney's fees that may be sustained by reason of the failure of [VMBC] to comply with applicable laws, ordinances, regulations and codes)."

97. As a result of VMBC's wrongful conduct described herein, TracFone has suffered or otherwise incurred or been subject to claims, losses, liabilities, damages, suits, actions, government procedures, taxes, penalties or interest, associated auditing and legal expenses and other costs.

Wherefore, TracFone demands judgment for full indemnity against VMBC for any monetary losses TracFone has suffered, together with pre-judgment and post-judgment interest, attorneys' fees under the SafeLink Contract, and costs.

## COUNT VII

## NEGLIGENT MISREPRESENTATION

98. TracFone repeats, re-alleges and incorporates by reference as if fully set forth herein the allegations contained in paragraphs 1 through 55 of this Complaint.

99. This is an action for negligent misrepresentation against VMBC.

100. VMBC represented to TracFone that the 2012 modifications to the Verification Application would work properly for their intended purpose. While VMBC believed this material fact to be true, it was in fact false as the modifications were materially defective.

101. VMBC also represented that, as modified in 2012, the Verification Application was free of material defects.

102. Had VMBC exercised reasonable care under the circumstances, it would have discovered that its representations were false.

103. In making the false representations, VMBC expected that TracFone would rely on the false representations as if they were actually true.

104. TracFone relied on the false representations, believing they were true, and was reasonably justified in doing so.

105. As a proximate cause of relying on VMBC's false representations described herein, TracFone has suffered or otherwise incurred or been subject to claims, losses, liabilities, damages, suits, actions, government procedures, taxes, penalties or interest, associated auditing and legal expenses and other costs.

Wherefore, TracFone demands judgment for damages against VMBC, together with pre-judgment and post-judgment interest and such attorneys' fees and costs that are allowable by law.

## COUNT VIII

## NEGLIGENT HIRING

106. TracFone re-alleges and incorporates as if fully set forth herein the allegations contained in paragraphs 1 through 55 of this Complaint.

107. This is an action for negligent hiring against VMBC.

108. VMBC and TracFone contracted for services under the SafeLink Contract pursuant to which VMBC developed a Verification Application for use by TracFone and its third party marketing agents. VMBC modified and updated this software program in 2012.

109. Unbeknownst to TracFone until July 2015, the 2012 modifications were defective and created a material defect in the verification system used to determine eligibility for participation in the SafeLink program under the applicable FCC rules.

110. VMBC owes a common law duty to exercise reasonable care and skill in the hiring of employees to perform the work required to be done pursuant to the SafeLink Contract, including the hiring of any employees responsible for the coding of modifications and updates to the Verification Application (the "Employee(s)").

111. VMBC breached this duty. The owners, executives, and/or senior management of VMBC were required to make an appropriate investigation of the Employee(s) hired to develop and code the Street Team App and any modifications and updates thereto, and failed to do so.

112. An appropriate investigation would have revealed the unsuitability of the Employee(s) to perform the necessary coding.

113. It was unreasonable for the owners, executives, and/or senior management of VMBC to hire the Employee(s) in light of the information they knew or should have known.

114. As a result of the negligent hiring of the Employee(s) responsible for the development and coding of the Verification Application and any modifications and updates thereto, VMBC has caused pecuniary injury to TracFone.

Wherefore, TracFone demands judgment for damages against VMBC together with pre-judgment and post-judgment interest, attorneys' fees under the SafeLink Contract, and costs.

## COUNT IX

## UNJUST ENRICHMENT

115. TracFone repeats, re-alleges and incorporates by reference as if fully set forth herein the allegations contained in paragraphs 1 through 55 of this Complaint.

116. This is an action for unjust enrichment against VMBC.

117. TracFone paid VMBC for the 2012 modifications to the Verification Application, a fee for the enrollment of each individual enrolled through the VMBC material defect, and fees associated with servicing and maintaining the accounts for the individuals enrolled through the VMBC material defect.

118. TracFone made, and VMBC accepted, these payments prior to discovering the material defect in the Verification Application, as modified.

119. As a proximate cause of the material defect in the Verification Application, as modified by VMBC, TracFone has suffered or otherwise incurred or been subject to claims, losses, liabilities, damages, suits, actions, government procedures, taxes, penalties or interest, associated auditing and legal expenses and other costs.

120. As a result, it would be inequitable for VMBC to retain any amounts paid to in connection with the 2012 modification of the Verification Application or any fees paid to it associated with individuals enrolled through the material defect.

Wherefore, TracFone demands judgment for damages against VMBC, together with pre-judgment and post-judgment interest and such attorneys' fees and costs that are allowable by law.

## COUNT X

### BREACH OF CONTRACT:
### MISUSE OF TRACFONE'S CONFIDENTIAL INFORMATION

121. TracFone repeats, re-alleges and incorporates by reference as if fully set forth herein the allegations contained in paragraphs 1 through 55 of this Complaint.

122. This is an action against VMBC for breach of the Agreement, as amended by the Exhibit and all of the Exhibit's amendments (collectively, the "SafeLink Contract").

123. TracFone fully performed all of its duties and obligations under the SafeLink Contract.

124. Pursuant to Section 12.7 of the SafeLink Contract, VMBC had a duty "not to use TracFone's Confidential Information for its own or for any other purpose except to engage in the said business opportunity." Pursuant to Section 12.14, VMBC agreed "to promptly advise [TracFone] of any misappropriation or misuse by any person of such Confidential Information, which may come to [its] attention."

125. VMBC breached Section 12.7 of the contract by using TracFone's confidential information for its own purpose, and breached Section 12.14 of the contract by failing to promptly advise TracFone of its misappropriation and misuse of TracFone's confidential information.

126. As a result of VMBC's breaches, TracFone has suffered damages.

Wherefore, TracFone demands judgment for damages against VMBC, together with pre-judgment and post-judgment interest, prevailing party attorneys' fees under the SafeLink Contract, and costs.

## COUNT XI

### MISAPPROPRIATION OF TRADE SECRET
### PURSUANT TO FLA. STAT. § 688.002

127. TracFone repeats, re-alleges and incorporates by reference as if fully set forth herein the allegations contained in paragraphs 1 through 55 of this Complaint.

128. This is an action for misappropriation of trade secrets against VMBC.

129. As part of its engagement with TracFone and subject to the many clear protections of the Agreement, VMBC was entrusted with and obtained access to TracFone's Confidential Business Processes, including but not limited to TracFone's proprietary business strategies and

procedures, know how, and other information relating to TracFone's identification, recruiting, training, managing, and retaining agents.

130. Pursuant to the Agreement, VMBC had a duty to maintain the secrecy of TracFone's Confidential Business Processes, and VMBC agreed not to use TracFone's confidential information for its own purposes.

131. TracFone has taken reasonable efforts to maintain the secrecy of its Confidential Business Processes, and does not disclose them to third parties without protections in place prohibiting their dissemination or misuse.

132. TracFone's Confidential Business Processes constitute "trade secrets" pursuant to Fla. Stat. § 688.002.

133. Without TracFone's consent or knowledge and in violation of the clear terms of the Agreement, VMBC misappropriated TracFone's trade secrets and used them for VMBC's own pecuniary gain.

134. VMBC's misappropriation of TracFone's trade secrets was done willfully and maliciously. VMBC was aware of the sensitive and proprietary nature of TracFone's trade secrets and of VMBC's contractual duty to maintain the secrecy of the Confidential Business Processes, but nevertheless misappropriated them for VMBC's own pecuniary gain and to TracFone's detriment.

135. As a direct and proximate result of VMBC's misappropriation of TracFone's trade secrets, TracFone has suffered and continues to suffer damages.

Wherefore, TracFone demands judgment for damages against VMBC, together with pre-judgment and post-judgment interest and such attorneys' fees and costs that are allowable by law.

## COUNT XII

## INJUNCTIVE RELIEF

136. TracFone repeats, re-alleges and incorporates by reference as if fully set forth herein the allegations contained in paragraphs 1 through 55 of this Complaint.

137. This is an action for injunctive relief.

138. An injunction must be entered to (a) prevent VMBC from discontinuing or compromising in any way, the above-described SafeLink enrollment and record management services; specifically, the Verification Application and TracFone's use of the same; (b) prevent VMBC from continuing to utilize TracFone's trade secrets in marketing and selling the Quest application; and (c) require VMBC to comply with the procedures of the Redeployment Option as exercised by TracFone.

139. TracFone will suffer immediate and irreparable harm in the absence of an injunction, as the damages caused by (a) any discontinuance or compromise by VMBC of the Verification Application; (b) VMBC's continued use of TracFone's trade secrets cannot adequately; and (c) VMBC's refusal to comply with the Redeployment Option cannot be measured or compensated in monetary terms.

140. TracFone has a clear legal right to an injunction based on the conduct described above.

141. TracFone does not have an adequate remedy at law to protect itself from (a) the potential discontinuance or compromise of the Verification Application by VMBC; (b) the ongoing misappropriation of TracFone's trade secrets; or (c) VMBC's refusal to comply with the Redeployment Option.

142. An injunction will serve a compelling public interest by ensuring TracFone may continue to provide low-income households with access to quality phone service at affordable rates.

143. TracFone has a substantial likelihood of success on the merits and a clear legal right to the requested relief.

144. The threatened injury to TracFone outweighs any possible harm to VMBC by (a) enjoining VMBC from discontinuing or compromising the Verification Application, (b) requiring VMBC to cease marketing and selling any products or services containing or relying on TracFone's Confidential Information, as that term is defined in Section 12.2 of the Agreement, and (c) requiring VMBC to comply with the Redeployment Option.

145. Wherefore, TracFone respectfully requests that this Court issue an injunction against VMBC (a) enjoining it from discontinuing or compromising the above-described SafeLink enrollment and record management services; specifically, the Verification Application or TracFone's use of the same; (b) enjoining it from continuing to market, sell, disseminate, disclose, or otherwise use TracFone's Confidential Information, and awarding TracFone attorney's fees and costs; and (c) requiring it to comply with the Redeployment Option as outlined in the agreements between the parties.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff TracFone Wireless, Inc. demands a trial by jury on all triable issues.

Dated: February 23, 2016

Aaron S. Weiss

Steven J. Brodie Bar (FBN 333069)
sbrodie@carltonfields.com
Aaron S. Weiss (FBN 48813)
aweiss@carltonfields.com
Carlton Fields Jorden Burt, P.A.
100 SE Second St., Suite 4200
Miami, Florida 33131
Telephone: (305) 530-0050
Facsimile: (305) 530-0055

*Attorneys for Plaintiff TracFone Wireless, Inc.*